IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JENNIFER BROWN,** | : | CIVIL ACTION |
| Plaintiff, | : | |
| vs. | : | NO. 09-3892 |
| | : | |
| **DAVITA DIALYSIS,** | : | |
| Defendant. | : | |

**DuBOIS, J.**                                                                                     February 13, 2012

# M E M O R A N D U M

## I. Introduction

In her Complaint, plaintiff Jennifer Brown alleges that her former employer, defendant DaVita Dialysis ("DaVita"), discriminated against her based on her race and retaliated against her when she complained about the alleged discrimination. She claims, inter alia, that Christopher Paul, the supervisor of DaVita's West Philadelphia clinic, wrongfully terminated her from her job as a nurse on November 1, 2007. (Compl. ¶¶ 15–17.) Plaintiff also alleges that defendant violated the Fair Labor Standards Act by failing to compensate her for time she was required to work in excess of her scheduled forty-hour workweek.

By Order dated November 8, 2011, the Court ruled on several motions in limine filed by both parties. On November 14, 2011, the Court granted partial judgment on the pleadings to Paul and DaVita employees Linda Gaeto and Jill Tortual as to Count VII of the Complaint.[1]

Now before the Court are Defendant's Motion in Limine to Preclude the Introduction of or Any Reference to the Corrective Action Form Issued to Christopher Paul in April 2010 and the March 29, 2010 E-mails Between Dennis Skrajewski, Matthew Assise, and Christopher Paul

---

[1] Count VII was plaintiff's only claim against those individuals; they are no longer parties to this case.

("Def.'s Jan. 24, 2012, Mot. in Limine") and Plaintiff Jennifer Brown's Motion in Limine to Preclude Evidence and for Costs as a Sanction for Bad Faith Violation of Discovery Order ("Pl.'s Feb. 5, 2012, Mot. in Limine").

## II. Defendant's January 24, 2012, Motion in Limine

The Court addresses each of the two documents at issue in defendant's motion in turn.

### A. The Corrective Action Form

Defendant moves to exclude a Corrective Action Form (or "Form") issued to Paul by his manager at DaVita, Dennis Skrajewski, in April 2010. (Corrective Action Form, Def.'s Jan. 24, 2012, Mot. in Limine Ex. A.[2]) Defendant argues that the Corrective Action Form is not relevant and is unfairly prejudicial.

Plaintiff responds that the Form "is relevant to prove that Mr. Paul mismanaged and lacked integrity while he supervised Ms. Brown[,] which tends to establish that Mr. Paul's reason for firing Ms. Brown is pretextual and retaliatory." (Pl.'s Answer Def.'s Mot. Limine Preclude Pl.'s Exs. Nos. 3 & 7 ("Pl.'s Ans.") 2.) She argues that the Form "contradicts a plethora of Mr. Paul's' statements at [his] deposition" that he was "a great manager who was justified in terminating Ms. Brown." (Id. at 2–3.)

The Corrective Action Form is a three-page form, completed in type with the exception of signatures and dates, about a "problem performance discussion" in which Skrajewski placed Paul on "Final Written Warning" due to "[i]neffective [l]eadership." (Corrective Action Form 1.) The "Date of Discussion" and signature dates are April 29, 2010. (Id. at 1, 3.)

According to the Form, Paul "was placed on a performance improvement plan in February," but his clinic "significantly underperformed in both clinical and financail [sic]

---

[2] The Corrective Action Form, which plaintiff refers to as "Exhibit 3," is Bates numbered DEF1269–71.

metrics." (Id. at 1.) The Form states that Paul demonstrated "weak leadership" in his "General Management/Judgment with teammates and disciplinary approach" and that his "integrity is questioned by both staff, peers, and senior leadership[,] further complicating [his] ability to be effective." (Id. at 2.) In the "consequences" box, the Form states that Paul's "job is in jeopardy if significant improvement . . . is not immediately demonstrated and sustained." (Id.)

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The Corrective Action Form is not relevant for two reasons. First, it is too remote in time from the facts giving rise to this case to have any probative value. Second, the Corrective Action Form is not relevant because it does not support an inference of racial discrimination.

Plaintiff alleges that Paul terminated her on November 1, 2007. (Compl. ¶ 21.) The Form records a corrective action taken against Paul on April 29, 2010, because, despite a "performance improvement plan in February"—which the Court infers to be February 2010—and despite "consum[ing] significant 'support resources,'" the clinic under Paul's supervision still "significantly underperformed." (Corrective Action Form 1.)

The Form makes three passing references to earlier dates—none earlier than December 2008—but its focus is Paul's underperformance between February and April 2010, more than two years after plaintiff's termination. That period is too remote from plaintiff's employment with defendant to make any fact of consequence to plaintiff's claims more or less likely.[3] See Fed. R. Evid. 401–402. Contrary to plaintiff's argument, because of the substantial gap in time, the Corrective Action Form does not "prove[] that Paul's lack of integrity existed during Ms.

---

[3] Moreover, the passing references to earlier dates—to "DQI scores in the 50's in Dec. 80, Dec. 09" and "Poor Financial Results In 2009"—have nothing to do with plaintiff's claims.

Brown's employment period and detrimentally affected it," (Pl.'s Ans. 2).  See Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 525 (3d Cir. 2003) ("There is . . . no bright line rule for determining when evidence is too remote to be relevant"; instead, relevance hinges on "the potential the evidence has for giving rise to reasonable inferences of fact which are of consequence to the determination of the action." (internal citations and quotation marks omitted)); King v. Hasbro, Inc., No. 07-4001, 2009 WL 3157319, at *1 (E.D. Pa. Sept. 28, 2009) ("Evidence regarding events that transpired subsequent to an injury is generally irrelevant to claims arising from that injury.").

In addition, the Corrective Action Form neither states nor implies that Paul's management difficulties encompassed racial discrimination.  Problems with "[g]eneral [m]anagement," "weak leadership," and "integrity [being] questioned" do not equate to an inference that Paul discriminated against plaintiff based on her race.  See Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994) ("To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." (citations omitted)).

The Court thus grants defendant's motion to exclude the Corrective Action Form.

**B.  The E-mail String**

Defendant also moves to exclude a one-page document containing e-mails dated March 29, 2010, among Paul, Skrajewski, and Matthew Assise ("Assise") ("the E-mail String").  (E-mail String, Def.'s Jan. 24, 2012, Mot. in Limine Ex. B.[4])  As with the Corrective Action Form,

---

[4] The E-mail String, which plaintiff refers to as "Exhibit 7," is Bates numbered DEF1277.

defendant argues that the E-mail String is not relevant under Federal Rule of Evidence 401 and is unfairly prejudicial under Federal Rule of Evidence 403.

The E-mail String is one page and contains two e-mails. The first, from Skrajewski to Paul, is dated March 29, 2010, at 10:10 p.m., and is copied to Assise and two other individuals. (E-mail String 1.) Skrajewski writes that he "heard some very disturbing things about [Paul's] center this afternoon during Matt Assise's Operations Review" and that he is attaching Assise's comments. (Id.) Skrajewski states that he is "shocked" and "want[s] to see aggressive corrective actions taken ASAP." (Id.)

The second e-mail, dated March 29, 2010, at 3:49 p.m., is from Assise to Skrajewski and, the Court infers, records Assise's "findings" from the Operations Review. (Id.) Assise states that "the BMT [biomedical technician] . . . confirm[ed] that the clinical team is very hard with equipment" and that "[t]he mess in the water room has improved some" but "still is not what we would expect for a new clinic." (Id.) Assise writes that he and "the BMT" have talked to "Chris"—presumably, Paul—to "work[] on holding the teammates accountable" for these issues. (Id.)

The Court concludes that the E-mail String is not relevant. According to plaintiff, "[b]asically, [the E-mail String] proves the inconsistency of Mr. Paul's reasons for termination" and "shows that DaVita . . . ignored and invalidated its own disciplinary procedure [in terminating plaintiff,] which is itself evidence of discriminatory treatment." (Pl.'s Ans. 7–8.) The E-mail String does neither of those things. It merely contains assertions about "hard" use of equipment and a "mess in the water room" that occurred in a time period immediately before March 29, 2010. (E-mail String 1.) Like the Corrective Action Form, the E-mail String describes events occurring more than two years after plaintiff's termination and has absolutely

nothing to do with plaintiff, her termination, or any inference of racial animus.  For that reason, it is not relevant.  See Fed. R. Evid. 401; see also Warren ex rel. Good v. Reading Sch. Dist., 278 F.3d 163, 168 n.2 (3d Cir. 2002) (expressing doubt that exhibit would be relevant when its "contents are so nebulous that only the rankest kind of speculation can connect it to anything relevant").

The Court thus grants defendant's motion to exclude the E-mail String.

### III. Plaintiff Jennifer Brown's Motion in Limine to Preclude Evidence and for Costs as a Sanction for Bad Faith Violation of Discovery Order

According to plaintiff, defendant has failed to comply with the Court's August 5, 2010, Order regarding discovery.  (Pl.'s Feb. 5, 2012, Mot. in Limine 1.)  Specifically, plaintiff argues that defendant violated the August 5, 2010, Order by failing to produce certain electronically stored information ("ESI")—specifically, "documents relating to the 'SNAPPY' program, systems or files[,] including any mention of chlorine testing" (referred to as "SNAPPY records"). (Id.)  As a sanction under Federal Rule of Civil Procedure 37(b)(2), plaintiff requests that the Court exclude Defendant's Exhibit 8, a one-page Corrective Action Form regarding plaintiff's entry of a chlorine test in the SNAPPY program, attached to plaintiff's motion as Exhibit A (referred to as "Defendant's Exhibit 8").  (Id.)  Plaintiff also asks the Court to order that defendant "pay her costs[,] which exceed 20 hours of legal work."  (Id. at 7.)[5]

---

[5] Plaintiff drastically overstates the scope of the Order, which provided: "defendants shall serve plaintiff with full and responsive Answers to Interrogatories, Requests for Production of Documents, and Requests for Production of Electronic Stored Information ("ESI"), and shall produce all discoverable documents and ESI."  (Aug. 5, 2010, Order.)  The August 5, 2010, Order made no specific reference to the SNAPPY records, and the Court did not consider whether those documents should be produced at that time.

As part of her September 20, 2011, Motions in Limine, plaintiff asked the Court to prohibit defendant from introducing the SNAPPY records.  By Order dated November 8, 2011, the Court denied that motion without prejudice to plaintiff's right to file a motion to compel "[b]ecause the record [was] not clear as to whether defendants produced any 'SNAPPY'-related documents." (Nov. 8, 2011, Order 2, 6.)

Defendant responds that it objected to plaintiff's earlier, more expansive requests for production of ESI because those requests were overbroad, unduly burdensome, and violative of the confidentiality rights of defendant's patients. (Def.'s Br. Opp'n Pl.'s Feb. 5, 2012, Mot. in Limine 1–2.) However, in response to plaintiff's motion, defendant states that it no longer objects to production because plaintiff has narrowed the scope of her request and, as of February 6, 2012, has articulated a "legitimate rationale for the requested 'Snappy records'" "for the first time." (Id. at 2–4.) Accordingly, defendant "is searching its computer system in an effort to retrieve the requested documents and, to the extent they exist, will produce same." (Id.)

Because defendant intends to produce any existing SNAPPY records, the Court denies plaintiff's motion to exclude Defendant's Exhibit 8 as moot. The Court concludes that sanctions under Rule 37(b)(2) are not justified and thus denies plaintiff's motion in all other respects.

An appropriate Order follows.