**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JENNIFER  BROWN,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| **vs.** | : | **NO. 09-3892** |
| | : | |
| **DAVITA DIALYSIS,** | : | |
| **Defendant.** | : | |

**DuBOIS, J.**                                                                                      **April 4, 2012**

**M E M O R A N D U M**

## I.      INTRODUCTION

In this case, plaintiff Jennifer Brown alleges that her former employer, defendant DaVita

Dialysis ("defendant" or "DaVita"), discriminated against her based on her race, retaliated

against her when she complained about the alleged discrimination, and failed to compensate her

for time she was required to work in excess of her scheduled forty-hour workweek.  She claims,

inter alia, that Christopher Paul, her supervisor at DaVita's West Philadelphia clinic, wrongfully

terminated her from her job as a nurse on November 1, 2007.

By Order dated November 8, 2011, the Court ruled on several motions in limine filed by

both parties. On November 14, 2011, the Court granted partial judgment on the pleadings to Paul

and DaVita employees Linda Gaeto and Jill Tortual as to Count VII of the Complaint.[1]  Brown v.

DaVita Dialysis, Civ. no. 09-3892, 2011 WL 5523823 (E.D. Pa. Nov. 14, 2011).  On February

13, 2012, the Court ruled on an additional set of motions in limine.   Brown v. DaVita Dialysis,

Civ. no. 09-3892, 2012 WL 460067 (E.D. Pa. Feb. 13, 2012).  Now before the Court are

Defendant's Motion in Limine to Preclude the Introduction of or Any Reference to Christopher

Paul's May 17, 2010, Resignation Letter ("Defendant's February 17, 2012, Motion in Limine")

---

[1] Count VII was plaintiff's only claim against those individuals, who are no longer parties to this
case.

and Plaintiff's Motion in Limine to Exclude Any Evidence, Reference, Argument, Suggestion

and/or Innuendo that Linda Gaeto Is Not the Proper Comparator to Plaintiff Jennifer Brown

("Plaintiff's February 23, 2012, Motion in Limine").  For the reasons set forth below, the Court

grants Defendant's February 17, 2012, Motion in Limine and denies Plaintiff's February 23,

2012, Motion in Limine.

## II.     DEFENDANT'S FEBRUARY 17, 2012, MOTION IN LIMINE

Defendant moves to exclude Christopher Paul's May 17, 2010, Resignation Letter to

Dennis Skrajewski, Paul's manager at DaVita ("Resignation Letter").[2]  Paul writes:

> West Philadelphia's clinical scores and financial outcomes were
> amongst the lowest in the division in 2009 mostly because I over
> estimated my ability to manage both West Philadelphia and Cobbs
> effectively.  Since my return to only managing West Philadelphia
> our clinical outcomes have improved . . . yet this has not been good
> enough.   In early February I was "written up" for my poor
> performance in 2009 and while the numbers continued to improve
> I was "written up" again in April this time citing lack of basic
> leadership skills and integrity.  I do not agree with the assessment
> of my management skills and I am personally offended that you
> have attacked my integrity. . . .
>
> I do not wish to resign my position but feel as though I have no
> other options.  You mentioned in our last meeting that you knew I
> had interviewed with FMC.  This is not true. . . . The fact of the
> matter is that I have felt an increasing lack of leadership since
> Kevin left the region and while that has finally been addressed I
> fear that the change is too little and has come too late . . . .
>
> Do [sic.] to the fact that I feel this is an irreconcilable situation I
> am submitting my resignation effective ~~May 31~~[st] [May 21[st]][3] 2010.
> As we had agreed upon . . . DaVita will not contest my filing for
> and receiving unemployment benefits.

---

[2] The Resignation Letter, which plaintiff refers to as "Exhibit 1," is Bates numbered DEF1267.

[3] "May 31st" is typed and crossed-out; "May 21st" is written in by hand.

(Resignation Letter, Def.'s Feb. 17, 2012, Mot. Limine Ex. A, at 1.)  "Resignation accepted – content of the letter is inaccurate" is handwritten on the letter, along with the date "5-18-10" and a signature that is difficult to read.[4]  (Id.)

Defendant argues that the Resignation Letter is not relevant and is unfairly prejudicial. Specifically, defendant asserts that the Resignation Letter is not admissible because it was written more than two-and-a-half years after plaintiff's termination and "neither states nor implies that [Paul's] management difficulties encompassed racial discrimination."  (Def.'s Feb. 17, 2012, Mot. in Limine 2.)  Plaintiff argues that the Resignation Letter is relevant for two reasons.  First, according to plaintiff, the letter "admits and describes the kind of issues that merit management and written disciplinary action," which shows that "Paul should have treated plaintiff like defendant treated Paul"—i.e., by merely disciplining her instead of terminating her. (Pl. Jennifer Brown's Answer Def.'s Feb. 17, 2012, Mot. Limine ("Pl.'s Ans.") 4.)  Second, plaintiff argues that the letter "basically admits that DaVita allowed Paul to leave his employment, rather than being terminated, on the condition that he would receive additional financial benefits" in the form of unemployment compensation.  (Id. at 5.)  Plaintiff avers that this constituted an "improper quid-pro quo related to Paul's continued cooperation with DaVita on this litigation."  (Id. at 3, 5.)

"Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401; see also Ansell v. Green Acres Contracting Co., Inc., 347 F.3d 515, 523–25 (3d Cir. 2003).  Although relevant evidence is generally admissible pursuant to Rule 402, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

---

[4] From the context, the Court infers the signature to belong to Skrajewski.

jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid.
403.

The Resignation Letter is not relevant to plaintiff's claim that she was wrongfully fired in
2007. Like the Corrective Action Form and E-mail String addressed in the Court's
Memorandum and Order dated February 13, 2012, the Resignation Letter only concerns the
events surrounding Paul's termination in 2010. It is "too remote in time from the facts giving
rise to this case to have any probative value" and "does not support an inference of racial
discrimination." Brown, 2012 WL 460067, at *2 (citing, inter alia, Ansell, 347 F.3d at 525;
Fuentes v. Perskie, 32 F.3d 759, 762 (3d Cir. 1994)). The letter—the contents of which may be
"inaccurate," according to handwritten note of the person who accepted the resignation—tends to
establish that DaVita's West Philadelphia clinic had poor "clinical scores and financial
outcomes" in 2009 and that Paul and Skrajewski's relationship deteriorated rapidly in 2010. It
does not tend to establish any fact of consequence to plaintiff's claims that she was wrongfully
terminated and not fully compensated for the hours that she worked in 2007.

Plaintiff attempts to distinguish the Resignation Letter from the Corrective Action Form
and E-mail String addressed in the Court's February 13, 2012, Memorandum, but these efforts
are unpersuasive. Plaintiff argues that the Resignation Letter proves that DaVita's disciplinary
process broke down in her termination in 2007. To the contrary, the letter merely states that Paul
was twice "written up"—in February 2010 for "poor performance in 2009" and in April 2010 for
a "lack of . . . basic leadership skills and integrity"—and that, due to his differences with
Skrajewski, Paul felt he had "no . . . options" other than resigning. (Resignation Letter 1.)
Nothing in the letter regarding DaVita's treatment of Paul, a facility manager, supports any

reasonable inference as to the disciplinary process that should have applied to plaintiff, a dialysis nurse, over two years earlier.

Plaintiff's claim that the Resignation Letter establishes Paul's bias in favor of DaVita because it proves DaVita "bribed" Paul regarding this case also drastically overstates the letter's contents. The Resignation Letter states: "As we had agreed upon, since I am resigning because I have no other options and because I have no other unemployment prospects at this time, DaVita will not contest my filing for and receiving unemployment benefits." (Resignation Letter 1.) Plaintiff overreaches in claiming that this sentence equates to proof that "Paul received unemployment benefits as hush money" to ensure his "cooperation with DaVita in this litigation," given that the sentence appears in the same letter in which Paul opines, inter alia, that he is "personally offended that [Skrajewski had] attacked [his] integrity." Should Paul testify, his bias towards DaVita may be relevant, but plaintiff cannot transform the Resignation Letter into relevant evidence merely by the unsupported contention that it demonstrates Paul's bias. See Marcus & Millichap Inv. Servs. of Chicago, Inc. v. Sekulovski, 639 F.3d 301, 307 (7th Cir. 2011) ("'Proof of bias' is not a talismanic phrase that extinguishes the trial court's duty to evaluate and possibly exclude evidence otherwise violative of the Rules.") (citing United States v. Abel, 469 U.S. 45, 50–51 (1994)).

The Resignation Letter is too remote in time from plaintiff's employment with defendant and contains no evidence bearing on plaintiff's claims. The Court rejects plaintiff's arguments that the Resignation Letter is relevant to show DaVita's disciplinary process or to show Paul's bias. Accordingly, the Court grants Defendant's February 17, 2012, Motion in Limine. [5]

---

[5] The Court's ruling that the Resignation Letter is not admissible is without prejudice to plaintiff's ability to cross-examine Paul regarding his potential bias in favor of DaVita if he testifies. See, e.g., Sekulovski, 639 F.3d at 307.

### III.    PLAINTIFF'S FEBRUARY 23, 2012, MOTION IN LIMINE

Plaintiff argues that the Court should "deem as established" that Linda Gaeto, a white female who, like plaintiff, worked as a nurse at DaVita, "is plaintiff's proper comparator for purposes of this suit" and should thus preclude defendant from presenting "any evidence, reference, argument, suggestion[,] or innuendo to the contrary." (Mem. Supp. Pl.'s Feb. 23, 2012, Mot. Limine 14.)  Defendant opposes plaintiff's motion, arguing that it plans to show that Gaeto and plaintiff were not similarly situated.  (Def.'s Br. Opp'n Pl.'s Feb. 23, 2012, Mot. Limine ("Def's Opp'n") 1.)  Based on the evidence it intends to offer at trial, defendant argues that the Court should determine as a matter of law that Gaeto is not a proper comparator.  (Id.)

As an element of a prima facie case of disparate-treatment racial discrimination under Title VII, a plaintiff must prove that she suffered an adverse employment action "under circumstances that give rise to an inference of discriminatory action."  Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410–11 (3d Cir. 1999).  A plaintiff may satisfy this element by introducing evidence "that the employer has treated more favorably similarly situated persons not within the protected class."  Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998).  "While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in 'all relevant respects.'"  Opsatnik v. Norfolk S. Corp., 335 F. App'x 220, 222–23 (3d Cir. 2009) (quoting Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)).  "Which factors are relevant is determined by the context of each case, but often includes a 'showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them."  Id. (quoting Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617–18 (7th Cir. 2000)).  Evidence

regarding purported comparators is "neither per se admissible nor per se inadmissible," <u>Houston v. Easton Area Sch. Dist.</u>, 355 F. App'x 651, 654  (3d Cir. 2009) (citing <u>Sprint/United Mgmt. Co. v. Mendelsohn</u>, 552 U.S. 378 (2008)), and whether to admit such evidence is a "heavily fact-driven" inquiry that varies "on a case-by-case basis," <u>Heller v. Elizabeth Forward Sch. Dist.</u>, 182 F. App'x 91, 95 (3d Cir. 2006).

On the present state of the record, there is a genuine dispute of material fact as to whether plaintiff and Gaeto were similarly situated.  Plaintiff has identified evidence that, if introduced at trial and credited by the jury, would tend to establish that she and Gaeto were similarly situated. Although plaintiff and Gaeto had different job titles,[6] Paul supervised both plaintiff and Gaeto between September and November 2007.  (Def.'s Resp. Pl.'s Feb. 22, 2012, Mot. Limine ¶ 5.) Paul testified at his deposition that he applied "measurable standards" to each employee under his supervision and that "[e]very teammate g[ot] treated the same way."  (Pl.'s Feb. 22, 2012, Mot. Limine 4 (quoting Paul Dep. 91).)  Most importantly, plaintiff avers that she and Gaeto were fulfilling similar patient-care roles during an incident on October 29, 2007, in which both plaintiff and Gaeto were insubordinate and were later disciplined by Paul.  (Pl.'s Feb. 22, 2012, Mot. Limine 4–5; <u>see also</u> Pl.'s Mem. L. Opp'n Defs.' Mot. Sanctions, Docket no. 51, at 1 ("Plaintiff witnessed [Gaeto] abandon 20 African American patients while these were connected to dialysis machines, receiving treatment and were under Gaeto's care.  Plaintiff was simultaneously taking care of an additional 20 patients receiving the same treatment.").)  Thus, plaintiff intends to show that she and Gaeto "dealt with the same supervisor, were subject to the

_____

[6] During the relevant time period, plaintiff's title was "Staff RN – Hemodialysis."  (DaVita Inc. Job Description, Pl.'s Feb. 23, 2012, Mot. Limine Ex. A.)  There is conflicting evidence as to what Gaeto's job title was during that time period.  (<u>See</u> DaVita Inc. Job Description, Pl.'s Feb. 23, 2012, Mot. Limine Ex. B (listing Gaeto's job title as of September 2008 as "Registered Nurse – Chronic"); Gaeto Dep., Def's Opp'n Ex. A, 11–13 (listing Gaeto's job title at unspecified times as "Staff Nurse," "Charge Nurse," and "Clinical Coordinator").)

same standards, and had engaged in similar conduct," each of which counsels in favor of her

argument that she and Gaeto were similarly situated. <u>Opsatnik</u>, 335 F. App'x at 222–23.

Defendant, however, plans to introduce evidence that, if credited by the jury, would tend

to show that plaintiff and Gaeto were not similarly situated. According to defendant, when the

October 29, 2007, incident occurred, plaintiff had only ten months of work experience at DaVita

and no prior experience as a dialysis nurse. (Def.'s Opp'n 2–3.) In contrast, Gaeto had worked

as a nurse for thirty-two years, with sixteen years' experience as a dialysis nurse and five as a

DaVita employee. (<u>Id.</u>) Defendant also argues that plaintiff and Gaeto were not similarly

situated because of their disparate disciplinary histories: plaintiff received three disciplinary

actions in less than a year with DaVita, while Gaeto received only one over five years. (<u>Id.</u> at 3.)

A jury could find that this evidence—along with any evidence tending to establish that plaintiff

and Gaeto had different jobs and different responsibilities[7]—constituted "differentiating or

mitigating circumstances as would distinguish [plaintiff's and Gaeto's] conduct or the

employer's treatment of them." <u>Opsatnik</u>, 335 F. App'x at 222–23.

On the present state of the record, the question whether plaintiff and Gaeto were similarly

situated is a matter for the jury to resolve.[8] <u>See Houston</u>, 355 F. App'x at 655–56 (in Title VII

case, holding that district court committed reversible error by granting motion in limine to

---

[7] Defendant argues that it plans to show that Gaeto was a supervisor because she was a "charge nurse," while plaintiff was a "rank-and-file staff nurse." (Def.'s Opp'n 2.) The present state of the record does not establish Gaeto's exact job title or responsibilities during the time in question, <u>see supra</u> note 6, apart from the fact that both Gaeto and plaintiff reported to Paul and were involved in patient care during the October 29, 2007, incident.

[8] The only case plaintiff cites for the proposition that she and Gaeto are comparators as a matter of law is one in which this Court held that a plaintiff and his alleged comparator were "subject to different standards and different performance expectations" and thus were not proper comparators. <u>Seiple v. Friendly Ice Cream Corp.</u>, Civ. no. 08-4201, 2009 WL 2776609, at *7 (E.D. Pa. Aug. 31, 2009). Apparently, plaintiff is arguing based on that case that she and Gaeto were subject to the same standards and performance expectations. That issue presents a jury question.

exclude evidence of retirement packages of alleged comparators).  The jury will evaluate this evidence in deciding whether plaintiff has met her "burden of demonstrating that similarly situated persons were treated differently."  <u>Simpson</u>, 142 F.3d at 645.

The Court thus denies Plaintiff's February 23, 2012, Motion in Limine.

IV.    **CONCLUSION**

For the foregoing reasons, the Court grants Defendant's February 17, 2012, Motion in Limine and denies Plaintiff's February 23, 2012, Motion in Limine.

An appropriate Order follows.